## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BETTY HERNANDEZ,** | |
| **Plaintiff,** | |
| **v.** | |
| **ARGENT TRUST COMPANY,** | **Case No.** |
| **JAMES R. URBACH,** | |
| **RYAN SASSON,** | |
| **DANIEL BLUMKIN,** | |
| **IAN BEHAR,** | |
| **DUKE ENTERPRISES LLC,** | |
| **TWIST FINANCIAL LLC, and** | |
| **BLAISE INVESTMENTS LLC,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Betty Hernandez, by her undersigned attorneys, pursuant to Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, for the relief available under Section 409(a) and other relief, 29 U.S.C. §§ 1109(a), 1132(a), alleges upon personal knowledge, the investigation of her counsel, and upon information and belief as to all other matters, as to which allegations she believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.      Plaintiff Betty Hernandez ("Plaintiff") brings this suit against: Argent Trust Company ("Argent"), the trustee for the Strategic ESOP (the "Plan") in 2017 when the Plan acquired shares of Strategic Family, Inc. ("Strategic Family") for $242,228,867; selling shareholders Ryan Sasson, Daniel Blumkin, and Ian Behar and their wholly owned limited liability companies Duke Enterprises LLC, Twist Financial LLC, and Blaise Investments LLC

("Shareholder Defendants"); and James R. Urbach, the trustee for the Plan in 2019 when another $104,500,000 was charged to the Plan for the Strategic Family shares it purchased in 2017, and in 2020 when another $45,000,000 was charged to the Plan for the previously purchased Strategic Family shares.

2.     Plaintiff is a participant in the Plan, as defined by Section 3(7) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1002(7), who was vested in shares of Strategic Family allocated to her account in the Plan. The Plan is designated as an employee stock ownership plan (ESOP).

3.     This action is brought under ERISA §§ 404, 406, 409, 410, and 502(a), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan and its participants caused by Argent when it caused the Plan to buy shares of Strategic Family for more than fair market value in 2017 and caused the Plan to enter into a contract that in 2019 and 2020 was cited as the basis for the Plan to become liable for $149,500,000 of additional consideration for the stock it purchased in 2017, and for losses caused by James R. Urbach when he caused the Plan to assume liability for the additional consideration in 2019 and 2020, and other relief.

4.     As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.     At all times, Strategic Family and its subsidiary Strategic Financial Solutions, LLC ("Strategic Financial") were privately held companies. Strategic Financial adopted the Plan effective May 1, 2017, and is the Plan's sponsor and administrator. On December 28, 2017, the Plan purchased 54,900 shares of Strategic Family's common stock at a price of approximately $4,412 per share for an aggregate purchase price of $242,228,867. The purchase was funded by the Plan's trust, the Strategic Employee Stock Ownership Trust (the "Trust"), signing notes

payable to the former stockholders (the lenders) for an aggregate value of $242,228,867 (the purchase and loan transactions together, the "2017 Transaction"). The Plan purchased 75% of Strategic Family's outstanding common stock and the company repurchased and cancelled the remaining 25% of its outstanding common stock. The loan note agreements provided for the loan to be repaid over 30 years and bore interest at 3.00%.

6.     As a result of the 2017 Transaction, Strategic Family became 100% employee owned.

7.     On April 30, 2018, the Plan refinanced the notes payable to the former stockholders under the terms of an Assumption Agreement with Strategic Family, under which Strategic Family unconditionally assumed all obligations of the Trust under the notes payable to former stockholders (the "Refinancing Transaction"). In return, the Trust signed a refinanced (internal) note payable to Strategic Family in the amount of $235,052,055 (the total amount of the notes payable to former stockholders at the date of signing). The terms of the refinanced (internal) note included a requirement to make 30 payments of principal and interest with certain minimum payments each year, with the balance of the notes being payable on December 31, 2046. Interest was to accrue at 3.04% per annum, an increase from the previous interest rate.

8.     In 2019 the principal amount of the refinanced internal note was increased by $104,500,000 (the "2019 Transaction") to the benefit of the selling shareholders including Shareholder Defendants and other shareholders (together "the Selling Shareholders"), purportedly because of meeting certain targets in the 2017 Transaction's Stock Purchase Agreement that Argent had negotiated for the Plan. The cost of the 54,900 shares of Strategic Family common stock to the Plan increased to $346,728,682 by December 31, 2019, but the Plan did not receive additional shares of stock above the consideration it received in the 2017 Transaction.

9.      In 2020 the principal amount of the refinanced internal note was increased by $45,000,000 (the "2020 Transaction") to the benefit of the Selling Shareholders, purportedly because of meeting certain targets in the 2017 Transaction's Stock Purchase Agreement that Argent had negotiated for the Plan. The cost of the 54,900 shares of Strategic Family common stock to the Plan increased to $391,728,867 by December 31, 2020, but the Plan did not receive additional shares of stock above the consideration it received in the 2017 Transaction.

10.      Argent represented the Plan and its participants as Trustee in the 2017 Transaction. It had sole and exclusive authority to negotiate the terms of the 2017 Transaction on the Plan's behalf.

11.      The 2017 Transaction allowed the Selling Shareholders to unload their interests in Strategic Family above fair market value, for the reasons explained below, and saddle the Plan with hundreds of millions of dollars of debt over a 30-year repayment period to finance the Transaction. Argent further breached its duties by negotiating a contract under which the Plan would assume additional liability in 2019 and 2020 for the Strategic Family shares purchased in 2017. Argent failed to fulfill its ERISA duties, as Trustee and fiduciary, to the Plan and its participants, including Plaintiff.

12.      Shareholder Defendants are parties in interest who sold shares to the Plan in the 2017 Transaction. Shareholder Defendants are liable under ERISA for knowingly participating in the ERISA-prohibited stock and loan transactions caused by Argent.

13.      Argent represented the Plan and its participants as Trustee in the Refinancing Transaction. It had sole and exclusive authority to negotiate the terms of the Refinancing Transaction on the Plan's behalf. Argent breached its fiduciary duties by approving the Refinancing Transaction, which was not solely in the interest of the participants and beneficiaries

and for the exclusive purpose of providing benefits to participants and the beneficiaries of the Plan and defraying reasonable expenses of administering the Plan.

14.    James R. Urbach represented the Plan and its participants as Trustee in the 2019 Transaction. He had sole and exclusive authority to allow the Plan to accept liability in 2019 for additional consideration for the shares it purchased in 2017, to value the Plan's shares of Strategic Family on the Plan's behalf, to assess whether targets were valid and met, and to cause additional Plan assets to be transferred to Shareholder Defendants, directly or indirectly. He breached his fiduciary duties by failing to act with the care, skill, prudence and diligence required by ERISA and by causing the 2019 Transaction.

15.    James R. Urbach represented the Plan and its participants as Trustee in the 2020 Transaction. He had sole and exclusive authority to allow the Plan to accept liability in 2020 for additional consideration for the shares it purchased in 2017, to value the Plan's shares of Strategic Family on the Plan's behalf, to assess whether targets were valid and met, and to cause additional Plan assets to be transferred to Shareholder Defendants, directly or indirectly. He breached his fiduciary duties by failing to act with the care, skill, prudence and diligence required by ERISA and by causing the 2020 Transaction.

16.    Shareholder Defendants are liable under ERISA for knowingly participating in the ERISA-prohibited 2019 and 2020 stock transactions caused by James R. Urbach, which were additional stages, in addition to the 2017 Transaction and the Refinancing Transaction, to the ESOP transaction (individually and together, the "ESOP Transaction"). The 2019 and 2020 Transactions were extensions of the 2017 Transaction in that the Selling Shareholders provided consideration to the Plan (Strategic Family stock) in the 2017 Transaction only, while the Plan

provided monetary consideration for the stock in the 2017, 2019, and 2020 stages of the ESOP Transaction.

17.     Through this action, Plaintiff seeks to enforce her rights under ERISA and the Plan, to recover the losses incurred by the Plan and/or the improper profits realized by Defendants resulting from their causing prohibited transactions and breaches of fiduciary duty or knowingly participating in prohibited transactions, and equitable relief, including rescission of the transactions and removal of fiduciaries who have failed to protect the Plan, including Plan Trustee James R. Urbach. Plaintiff requests that the transactions be declared void, Defendants be required to restore any losses to the Plan arising from their ERISA violations, Defendants be ordered to disgorge any profits, and any monies recovered for the Plan be allocated to the accounts of the Class members.

## JURISDICTION AND VENUE

18.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to require Plan trustees Argent and James R. Urbach to make good to the Plan losses resulting from their violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against Argent, James R. Urbach and Shareholder Defendants, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

19.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

20.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, because some of the events or

omissions giving rise to the claims occurred in this District, and because one or more Defendants reside or may be found in this District.

## PARTIES

21.     Plaintiff Betty Hernandez is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the adoption of the Plan effective on May 1, 2017. Plaintiff Hernandez resides in New York, New York. She was a Financial Consultant at Strategic Financial. She was employed there from October 15, 2015 to October 2020. She vested in shares of Strategic Family in her Plan account. She currently retains an account balance in her individual account in the Plan.

22.     Defendant Argent operates as an investment management firm and offers financial planning, trusts, and real estate management services to families and organizations. Argent's principal place of business is 1100 Abernathy Road, 500 Northpark, Suite 550, Atlanta, Georgia 30328. Argent is a division of Argent Financial Group, an independent wealth management firm. Argent Financial Group is headquartered at 500 E Reynolds Dr., Ruston, Louisiana 71270.

23.     Defendant Argent was the Trustee of the Plan at the time of the 2017 Transaction and the Refinancing Transaction and up to October 31, 2019, the effective date of its replacement as Trustee. Argent was a "fiduciary" under ERISA because it was the Trustee. As Trustee, Argent had exclusive authority to manage and control the assets of the Plan and had sole and exclusive discretion to authorize and negotiate the 2017 Transaction and the Refinancing Transaction on the Plan's behalf.

24.     Defendant Ryan Sasson was a Selling Shareholder in the ESOP Transaction, directly or indirectly through his wholly owned limited liability company, Duke Enterprises LLC. He was the Chief Executive Officer and a Director of Strategic Family and/or its subsidiary

Strategic Financial (together, "Strategic") at the time of the 2017 Transaction and continuing to the present. Ryan Sasson was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), in the ESOP Transaction as a 10 percent or more shareholder of Strategic Family, directly or indirectly; and/or as a Strategic director or person with powers or responsibilities similar to a director; and/or as an officer of Strategic or person with powers or responsibilities similar to an officer; and/or as an employee of Strategic.

25.    Defendant Ryan Sasson was since the ESOP Transaction employed at and was an officer and director at Strategic Financial at 711 3rd Avenue, 6th Floor, New York, New York 10017. Ryan Sasson resides at 205 East 59th Street, PH, New York, New York 10022.

26.    Defendant Daniel Blumkin was a Selling Shareholder in the ESOP Transaction, directly or indirectly through his wholly owned limited liability company, Twist Financial LLC. He was the President and Chief Sales Officer and a Director of Strategic at the time of the 2017 Transaction and continuing to the present. Daniel Blumkin was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), in the ESOP Transaction as a 10 percent or more shareholder of Strategic Family, directly or indirectly; and/or as a Strategic director or person with powers or responsibilities similar to a director; and/or as an officer of Strategic or person with powers or responsibilities similar to an officer; and/or as an employee of Strategic.

27.    Defendant Daniel Blumkin was since the ESOP Transaction employed at and was an officer and director at Strategic Financial at 711 3rd Avenue, 6th Floor, New York, New York 10017. Daniel Blumkin resides at 512 Wilshire Dr., Great Neck, New York 11020.

28.    Defendant Ian Behar was a Selling Shareholder in the ESOP Transaction, directly or indirectly through his wholly owned limited liability company, Blaise Investments LLC. He was a director and/or officer of Strategic at the time of the 2017 Transaction. Ian Behar was a party

in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), in the ESOP Transaction as a 10 percent or more shareholder of Strategic Family, directly or indirectly; and/or as a Strategic director or person with powers or responsibilities similar to a director; and/or as an officer of Strategic or person with powers or responsibilities similar to an officer.

29.    Defendant Ian Behar resides at 54 Warren Street, Apt. PH, New York, New York 10007.

30.    Defendant Duke Enterprises LLC was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), in the ESOP Transaction as a 10 percent or more shareholder of Strategic Family, directly or indirectly. Upon information and belief, Duke Enterprises LLC was formed in Delaware on November 14, 2013. Ryan Sasson owns and manages Duke Enterprises LLC. Duke Enterprises LLC has a principal place of business at 711 3rd Avenue, New York, New York 10017.

31.    Defendant Twist Financial LLC was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), in the ESOP Transaction as a 10 percent or more shareholder of Strategic Family, directly or indirectly. Twist Financial LLC was formed in Delaware on January 4, 2010. Daniel Blumkin owns and manages Twist Financial LLC. Twist Financial LLC has a principal place of business at 512 Wilshire Dr., Great Neck, New York 11020.

32.    Defendant Blaise Investments LLC was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), in the ESOP Transaction as a 10 percent or more shareholder of Strategic Family, directly or indirectly. Blaise Investments LLC was formed in Delaware on January 4, 2010. Ian Behar owns and manages Blaise Investments LLC. Blaise Investments LLC has an address at 54 Warren Street, Apt. PH, New York, New York 10007.

33.    Defendant James R. Urbach was the Trustee of the Plan effective October 31, 2019, and to the present. James R. Urbach was and is a "fiduciary" under ERISA because he was the

Trustee. As Trustee, James R. Urbach had exclusive authority to manage and control the assets of the Plan and had sole and exclusive discretion to value the Plan's stock and authorize the 2019 Transaction and 2020 Transaction on the Plan's behalf.

34.    Defendant James R. Urbach was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at all times that he was Trustee of the Plan. The Notes to Financial Statements of the Plan's Forms 5500 Annual Return/Report state that service providers to the Plan are parties in interest under ERISA, and that James R. Urbach was the Plan's Trustee.

35.    Defendant James R. Urbach is President of ESOP Fiduciaries, Inc., which has an address at 1690 Atlantic Beach Drive, Atlantic Beach, Florida 32233.

## FACTUAL ALLEGATIONS

### Plan Background and the 2017–2018 Stock and Loan Transactions

36.    Strategic Financial bills itself as an award-winning financial services firm dedicated to helping people burdened with debt, which creates personalized debt relief programs that include debt consolidation loans and debt resolution programs. Strategic Financial and its parent Strategic Family, a holding company, are headquartered in Manhattan, New York. Strategic Financial also has an office called Strategic Financial Solutions Buffalo in Amherst, New York. Strategic Financial was founded in 2007 by Ryan Sasson, Daniel Blumkin, and Ian Behar. The company had more than 600 employees at the time of the 2017 Transaction, with about 600 employees in Manhattan and about 70 employees in Amherst. Strategic Financial and Strategic Family were at all times private companies.

37.    Strategic Family and/or Strategic Financial have had other subsidiaries since the effective date of the Plan. Participating Employers in the Plan include Strategic Financial; Strategic Family; Strategic Client Support, LLC; Strategic Consulting, LLC; and Strategic I.D., LLC.

38.     Strategic Family has been located at 711 3rd Avenue, 6th Floor, New York, New York 10017, from the effective date of the Plan on May 1, 2017 to the present. Strategic Family owned Strategic Financial at the time of the 2017 Transaction and to the present.

39.     Strategic Family was incorporated in Delaware on October 31, 2017.

40.     Strategic Family stock is not readily tradable on an established securities market. There is and was no public market for Strategic Family stock.

41.     Strategic Financial was formed in Delaware on October 8, 2010.

42.     Strategic Financial adopted the Plan effective May 1, 2017.

43.     Strategic Financial is and was from the inception of the Plan the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

44.     Strategic Financial was headquartered in this District at 711 3rd Avenue, 6th Floor, New York, New York 10017, from the effective date of the Plan on May 1, 2017 to the present. Strategic Financial is and was the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), from the effective date of the Plan to the present. The Plan's Forms 5500 report at Part II Lines 2a & 3a that Strategic Financial is the Plan's administrator.

45.     The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

46.     The Plan is intended to be a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of Strategic Family.

47.     The Plan's principal asset is and has been Strategic Family stock at all times since the 2017 Transaction.

48.     The Plan is an individual account plan, or defined contribution plan, under which a separate individual account was established for each participant.

49.     Employees of Strategic Financial and its participating subsidiaries are generally eligible to participate in the Plan after one year of service, providing they worked at least 1,000 hours during such Plan Year, and are age 21. For the 2017 Plan Year, the first year of operation for the Plan, all employees who had attained age 21 and were employed on the last day of the Plan Year were eligible to enter the Plan as of the later of their date of employment or May 1, 2017, regardless of service requirement.

50.     Employees of Strategic Financial and its parent Strategic Family participate in the Plan.

51.     Strategic Financial's functions as Plan Administrator were executed by its employees on its Strategic ESOP Committee, who were appointed to the Committee by Strategic Financial.

52.     Strategic Financial is and was an ERISA fiduciary to the Plan as its administrator, and because it appointed members of the Strategic ESOP Committee.

53.     Strategic Financial is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

54.     Strategic Family acted directly as an employer of Plan participants, and/or indirectly in the interest of Strategic Financial and/or other subsidiaries or affiliates who employed Plan participants, in relation to the Plan.

55.     Strategic Family is and was an owner of 50 percent or more of (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation; (ii) the capital interest or the profits interest of a partnership; or (iii) the

beneficial interest of a trust or unincorporated enterprise, which is an employer of Plan participants and a Plan fiduciary. That is, Strategic Family, as owner of Strategic Financial, was and is a party in interest.

56.    The Schedules H, Line 4i -Schedule of Assets (Held At End of Year) to the Plan's Forms 5500 Annual Return/Report report that Strategic Family is a party in interest to the Plan.

57.    Note 9 to the Financial Statements to the Plan's 2018, 2019 and 2020 Forms 5500 Annual Return/Report reports that the Plan's indebtedness to Strategic Family for the loan to be used to purchase the Strategic Family stock is a party in interest transaction.

58.    The Plan's 2017 and 2018 Forms 5500 were signed by Kimberly Celic, the Chief People Officer, on behalf of Strategic Financial in its capacity as Plan Administrator and as employer/plan sponsor, under penalty of perjury. The Plan's 2019 Form 5500 was signed by Kimberly Celic on behalf of Strategic Financial in its capacity as Plan Administrator, and by Ashley Winslow, the Payroll and Benefits Manager, on behalf of Strategic Financial in its capacity as employer/plan sponsor, under penalty of perjury. The Plan's 2020 Form 5500 was signed by Ashley Winslow on behalf of Strategic Financial in its capacity as Plan Administrator and as employer/plan sponsor, under penalty of perjury.

59.    Strategic Family was at the time of the 2017 Transaction and at all times to present a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

60.    Note 9 to the Financial Statements to the Plan's 2017 Form 5500 Annual Return/Report reports that the Plan's stock and loan transactions with the former shareholders "are related party and party in interest transactions."

61.     Strategic Financial appointed Argent as Trustee of the Plan. As Trustee, Argent had sole and exclusive authority to negotiate and approve the 2017 Transaction on behalf of the Plan, including the price the Plan paid for Strategic Family stock.

62.     As Trustee for the Plan, it was Argent's exclusive duty to ensure that any transactions between the Plan and the Selling Shareholders and between the Plan and Strategic Family, including acquisitions of Strategic Family stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

63.     On December 28, 2017, the Plan purchased from the Selling Shareholders 54,900 shares of Strategic Family's common stock for approximately $4,412 per share for an aggregate purchase price of $242,228,867.

64.     The Plan purchased 75% of Strategic Family's outstanding common stock and the company repurchased and cancelled the remaining 25% of its outstanding common stock, which it thereafter retired. At that time, Strategic Family became 100% employee owned.

65.     The Selling Shareholders, including Shareholder Defendants, were the shareholders of Strategic Family common stock at the time of the 2017 Transaction.

66.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. In addition to Shareholder Defendants, one or more other Selling Shareholders were parties in interest to the Plan at the time of the ESOP Transaction.

67.     The Plan's purchase of the stock was funded by the Plan's trust, the Strategic Employee Stock Ownership Trust, signing notes payable to the former stockholders (the Lenders) for an aggregate value of $242,228,867. The loan note agreements provided for the loan to be repaid over 30 years and bore interest at 3.00%.

68.    On April 30, 2018, the Plan refinanced those notes under the terms of an Assumption Agreement with Strategic Family, under which Strategic Family unconditionally assumed all obligations of the Trust under the notes payable to former stockholders. In return, the Trust signed a refinanced (internal) note payable to Strategic Family in the amount of $235,052,055 (the total amount of the notes payable to former stockholders at the date of signing). The terms of the refinanced (internal) note included a requirement to make 30 payments of principal and interest with certain minimum payments each year, with the balance of the notes being payable on December 31, 2046. Interest was to accrue at 3.04% per annum, an increase from the previous interest rate.

69.    Also pursuant to the Assumption Agreement, Strategic Family issued notes payable to the former stockholders in the amount of $235,052,055. The terms of these notes payable require interest to accrue daily at an annual rate of 3.04%. There is no defined repayment term, but the notes mature and are payable in full on December 31, 2028.

70.    Plaintiff Hernandez was allocated shares of Strategic Family stock in her individual account in the Plan in 2017, 2018, and 2019. She was vested in Strategic Family shares in her Plan account.

71.    Strategic Financial announced in a media release dated February 6, 2018, that:

> Strategic Financial Solutions has announced that it is now wholly employee-owned through an Employee Stock Ownership Plan (ESOP). This new corporate governance structure will ensure the company can continue its rapid growth while staying true to its core values and unique culture.
>
> As a result of the transaction, there will be no changes in the company's senior management, client services, operations, or business strategy. Co-founders Ryan Sasson and Daniel Blumkin will continue to serve as CEO and President respectively.

72.     Before and following the 2017 Transaction, Strategic's Board of Directors included Defendants Ryan Sasson, Daniel Blumkin, and Ian Behar, and another Selling Shareholder, directly or indirectly, Jordan Levy.

73.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan paid a control premium for Strategic Family even though the Plan did not obtain control over the Strategic Family Board of Directors upon its 2017 purchase of the company. Further, the Plan did not receive a discount for lack of control. The Plan therefore overpaid for Strategic Family. Selling Shareholders retained control of the Board as a result of warrants received in exchange for their Strategic Family shares and other Transaction and/or corporate documents and as a result of Shareholder Defendants' continuing authority as Strategic officers. Shareholder Defendants further retained control of the Plan, including its acceptance of the 2019 Transaction and the 2020 Transaction, because they had the power to terminate Argent as Plan Trustee and hire another trustee, and Argent was replaced as Trustee effective October 31, 2019, due to its refusal to approve the 2019 Transaction that benefited the Selling Shareholders to the detriment of the Plan and its participants.

74.     As Trustee, Argent is subject to liability for a payment by the Plan of more than fair market value for Strategic Family stock caused by the Plan's payment of a control premium where a previous owner or owners retained control of Strategic Family, the Plan's failure to receive a discount for lack of control, and/or other factors in Argent's faulty valuation of Strategic Family in the ESOP Transaction.

75.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or

discovery. Strategic provided financial projections to Argent for the valuation for the ESOP Transaction. The financial projections were unreasonably optimistic.

76.    While the Plan paid $242,228,867 for the 54,900 shares of Strategic Family's common stock on December 28, 2017, the stock was revalued at $111,282,300 as of December 31, 2017. Dropping further on a new valuation as of December 31, 2018, the Strategic Family stock was revalued at $101,455,200. Plaintiff does not aver that any of these valuations was accurate.

77.    Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Argent did not perform due diligence in the course of the ESOP Transaction similar to the due diligence that is performed by third-party buyers in large corporate transactions. Argent's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The Plan overpaid for Strategic Family stock in the ESOP Transaction due to Argent's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate guideline public companies for comparison, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered the valuation of Strategic Family stock in the ESOP Transaction faulty. Argent's failure to act with care, skill, prudence, and diligence is further demonstrated by its approving a Stock Purchase Agreement term that purportedly caused the Plan, in 2019 and 2020, to assume additional obligations together exceeding $149 million for the Strategic Family stock, further in excess of fair market value.

78.     Incentives to Argent to act without sufficient diligence, care and skill in the ESOP Transaction in breach of its duty of loyalty to the Plan included the possibility of business from sellers of companies who understood that Argent applied a lesser degree of due diligence in ESOP purchases of businesses than is typical for non-ESOP-buyers' purchases of businesses, and engagement as the Plan's ongoing trustee after the 2017 Transaction and the fees paid for that engagement.

79.     Argent is liable to the Plan for the difference between the price paid by the Plan—at the time of the 2017 Transaction and at present following the 2019 and 2020 Transactions that were caused by the Stock Purchase Agreement Argent imprudently entered into on behalf of the Plan—and the fair market value of Strategic Family shares at the time of the 2017 Transaction.

80.     Shareholder Defendants are liable to the Plan to repay the difference between the price they received and the fair market value of their Strategic Family shares at the time of the 2017 Transaction.

81.     In other litigation, Mikael Rapaport, who had been a shareholder of Strategic Family and/or Strategic Financial, alleges: "The 1042 Rollover is known to be one of the main advantages of an ESOP buy-out transaction of this kind and is assumed to be a primary reason why Mr. Ryan Sasson and other officers who are also shareholders in SFS Inc. (directly or through their respective single members' limited liability companies) chose to enter into the ESOP Transaction." *Peerform Holdings, LLC, et al. v. Strategic Family, Inc., et al.*, No. 652634/2019, *complaint filed*, 2019 WL 1997636, at ¶ 32 (N.Y. Sup. Ct. N.Y. Cty. May 3, 2019). Such a rollover allows shareholders to "defer capital gains tax under Section 1042 of the Internal Revenue Code by reinvesting the proceeds of the ESOP Transaction into 'qualified replacement properties' within a 12 months period after the closing of the ESOP Transaction." *Id.* at ¶ 31.

82.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan did not qualify as, and was not at any time, an eligible individual account plan (EIAP) or an ESOP. The Plan, from its inception, was not a bona fide program for the exclusive benefit of employees in general or their beneficiaries. The ESOP Transaction allowed the Selling Shareholders to overcharge the Plan for the purchase of their Strategic Family stock and to enjoy certain tax advantages by selling to a purported ESOP rather than to a non-ESOP buyer. The ESOP Transaction loans were not primarily for the benefit of Plan participants and beneficiaries, but for the Selling Shareholders.

83.     The Notes to Financial Statements of the Plan's Forms 5500 explain that the Plan's operating expenses for 2017 through 2020 were paid by Strategic Family.

84.     Argent received consideration for its own personal account from Strategic for its services in the ESOP Transaction, in the form of fees and an indemnification agreement, under a contract made when the Selling Shareholders owned Strategic.

<u>**The 2019 Transaction and 2020 Transaction**</u>

85.     In 2019 the principal amount of the refinanced internal note was increased by $104,500,000, purportedly as a result of the achievement of certain targets in the Stock Purchase Agreement, which Argent had negotiated, for the year ended December 31, 2019.

86.     By December 31, 2019, the cost of the Strategic Family shares to the Plan had increased to $346,728,682.

87.     James R. Urbach of ESOP Fiduciaries, Inc. became the Plan's Trustee effective October 31, 2019, and was the Trustee who allowed the principal amount to be increased in or as of 2019 under a faulty valuation, faulty assessment of targets, invalid contractual provision, and in

violation of applicable ERISA law governing ESOP purchases of company stock for no more than adequate consideration at the time of an ESOP transaction.

88.     Strategic Financial, under the control of Selling Shareholders, appointed James R. Urbach as Trustee of the Plan.

89.     While Argent had valued Strategic Family stock lower as of December 31, 2018, than it had previously in two valuations as of December 31, 2017, and December 28, 2017, James R. Urbach radically switched course to find the value of Strategic Family had risen enough in 2019 to trigger an additional $104,500,000 payment by the Plan for the company stock.

90.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Argent ceased being the Plan's Trustee effective October 31, 2019, because it would not allow the increase to the principal amount of the refinanced internal note. James R. Urbach was hired by Strategic, which was under the control of Selling Shareholders including Shareholder Defendants, to goose a company valuation that Argent would not bless, to agree targets set forth in the Stock Purchase Agreement allowed a retroactive adjustment to the Plan's initial purchase price of the Strategic Family shares, and to cause the Plan to pay, in 2019 and thereafter, additional amounts for the stock above fair market value in violation of ERISA and sound business principles of evaluation. Defendant Urbach was directly or indirectly controlled by parties to the ESOP Transaction other than the Plan. He acted for the benefit of the Selling Shareholders and breached his fiduciary duties by triggering the 2019 Transaction, which was not solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and the beneficiaries of the Plan and defraying reasonable expenses of administering the Plan. Shareholder Defendants knowingly sold stock to the Plan above fair market value in 2017 and

increased the Plan's losses by knowingly accepting transfers of additional Plan assets above fair market value for the stock in the 2019 and 2020 Transactions.

91.     In other ERISA litigation, claims that James R. Urbach caused prohibited transactions and breached his fiduciary duties as trustee to an ESOP were held to state plausible claims in 2020. *See Gamache v. Hogue*, 446 F. Supp. 3d 1315 (M.D. Ga. 2020). Defendant Urbach similarly is alleged to have breached ERISA here in his role as trustee to an alleged ESOP, the Plan.

92.     James R. Urbach is an attorney who purports to maintain a law practice in Atlantic Beach, Florida, at Urbach Law Group. A search of the Florida Bar website, however, did not list a James Urbach as licensed to practice law in Florida.

93.     In 2020 the principal amount of the refinanced internal note was increased by $45,000,000, purportedly as a result of the achievement of certain targets in the Stock Purchase Agreement, which Argent had negotiated, for the year ended December 31, 2020.

94.     By December 31, 2020, the cost of the 54,900 shares of Strategic Family common stock to the Plan increased to $391,728,867.

95.     James R. Urbach of ESOP Fiduciaries, Inc. was the Trustee who allowed the principal amount to be increased in or as of 2020 under a faulty valuation, faulty assessment of targets, invalid contractual provision, and in violation of applicable ERISA law governing ESOP purchases of company stock for no more than adequate consideration at the time of an ESOP transaction.

### The Trustees' Indemnification Agreements

96.     Pursuant to Argent's engagement agreement, Strategic, when it was owned by the Selling Shareholders, agreed to indemnify Argent as Plan Trustee in connection with the ESOP

Transaction. The indemnification agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation.

97.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The indemnification agreement does not contain an exemption addressing violation of the *per se* prohibited transaction rules under ERISA § 406. The indemnification agreement does not require payment of interest or otherwise account for the time value of money should Argent ultimately be required to reimburse Strategic.

98.     The indemnification agreement is invalid under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy because Argent violated its ERISA duties to the Plan, and its legal defense and liability for the Plan's losses should not be paid by the company that the Plan owns.

99.     Payment by Strategic of millions of dollars of attorneys' fees, costs, litigation expenses, and liabilities to Argent necessarily would adversely impact Strategic Family's equity value and therefore the value of Plan assets. Direct payment or reimbursement of Argent's attorneys' fees, costs, litigation expenses, and liabilities by Strategic, or the Plan that owns it, would adversely affect the Plan and Plaintiff's and other participants' financial interests.

100.     Pursuant to James R. Urbach's engagement agreement and/or trust agreement, Strategic, at a time that it was controlled by Selling Shareholders—including Defendants Sasson and Blumkin who were directors and officers—agreed to indemnify Defendant Urbach as Plan Trustee, including his work on the 2019 Transaction and the 2020 Transaction. The indemnification agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation.

101.    Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The indemnification agreement does not contain an exemption addressing violation of the *per se* prohibited transaction rules under ERISA § 406. The indemnification agreement does not require payment of interest or otherwise account for the time value of money should James R. Urbach ultimately be required to reimburse Strategic.

102.    The indemnification agreement is invalid under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy because James R. Urbach violated his ERISA duties to the Plan, and his legal defense and liability for the Plan's losses should not be paid by the company that the Plan owns.

103.    Payment by Strategic of millions of dollars of attorneys' fees, costs, litigation expenses, and liabilities to James R. Urbach necessarily would adversely impact Strategic Family's equity value and therefore the value of Plan assets. Direct payment or reimbursement of Defendant Urbach's attorneys' fees, costs, litigation expenses, and liabilities by Strategic, or the Plan that owns it, would adversely affect the Plan and Plaintiff's and other participants' financial interests.

## CLAIMS FOR RELIEF

### COUNT I

**Causing and Engaging in Prohibited Transactions Forbidden by
ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b), Against Argent**

104.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

105.    ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here Argent, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here Strategic Family stock, with a party in interest, here the Selling Shareholders, as took place in the ESOP Transaction.

106.    ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits Argent from causing the Plan to borrow money from a party in interest, here the Selling Shareholders and Strategic Family, as took place in the ESOP Transaction.

107.    ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits Argent from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Selling Shareholders, of any assets of the Plan, as took place in and after the ESOP Transaction with the transfer of Plan assets as payment for Strategic Family stock and in continuing payments on the loan.

108.    The stock and loan transactions between the Plan and the parties in interest were authorized by Argent in its capacity as Trustee for the Plan.

109.    Argent caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

110.    ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

111.    Argent caused the Plan to acquire Strategic Family stock from the Selling Shareholders above fair market value and with the proceeds of loans that were used to pay the Selling Shareholders. This primarily benefited the Selling Shareholders to the substantial detriment of the Plan and its participants and beneficiaries, even though Argent was required to act solely in the interests of the Plan's participants and beneficiaries in connection with any such transaction.

112.    Argent received consideration for its own personal account from Strategic—fees and an indemnification agreement—as Trustee for the Plan in the ESOP Transaction, in violation of ERISA § 406(b)(3).

113.    Argent caused and engaged in prohibited transactions in violation of ERISA § 406(b) in the ESOP Transaction.

114.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

115.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

116.    Argent has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

**Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against Argent**

117.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

118.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise

of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

119.    The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

120.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

121.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

122.    Argent was required to undertake an appropriate and independent investigation of the fair market value of Strategic Family stock in or about December 2017 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the Strategic Family stock purchased by the Plan. Argent failed to conduct a thorough investigation into the merits of the investment and further breached its duties in approving the Plan's purchase of Strategic Family stock at the price agreed to in the 2017 Transaction.

123.    In the Refinancing Transaction in April 2018, Argent was required to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the

exclusive purpose of providing benefits to participants and the beneficiaries of the Plan and defraying reasonable expenses of administering the Plan. The refinancing for the benefit of the Selling Shareholders, at a higher rate of interest than had been agreed to in the 2017 Transaction, breached this duty.

124.    Argent's negotiation of a Stock Purchase Agreement that allowed the principal amount of the refinanced internal note to be increased by $104,500,000 in 2019 and further increased by $45,000,000 in 2020, even further afield from the fair market value of Strategic Family stock at the time of the 2017 Transaction, was a breach of its duties of care, skill, prudence and diligence. Argent's agreement that the initial purchase price could be adjusted with increases in subsequent years, rather than conclusively establish the Plan's cost for the shares based on their fair market value determined as of the date of the 2017 Transaction, breached its fiduciary duties of care, skill, prudence and diligence, sound business principles of evaluation, and its obligation to make a good faith valuation of the fair market value of Strategic Family stock as of the date of the 2017 Transaction and to cause the Plan to pay no more than that amount.

125.    Argent further breached its fiduciary duty as Trustee by failing to take action to prevent the 2019 Transaction by actions including but not limited to filing suit or informing appropriate regulatory agencies including the U.S. Department of Labor.

126.    Argent breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

127.    Argent has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

## COUNT III

### Violation of ERISA §§ 410 and 404(a)(1)(A), (B),
### 29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), Against Argent

128.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

129.    ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA § 406 is under Part IV, any provision that attempts to relieve Argent, a Plan fiduciary, of responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable to the Count I claim here.

130.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

131.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

132.    The indemnification agreement purports to provide payment or reimbursement for the benefit of Argent against any and all claims, damages, expenses, liabilities, and losses, including but not limited to attorneys' fees.

133.    To the extent that the indemnification agreement attempts to relieve Argent of its responsibility or liability to discharge its duties under ERISA, or attempts to have Strategic (a

Plan-owned company) and thereby the Plan be responsible for Argent's liability for breaches of the statute, including but not limited to defense costs, such provisions are void as against public policy.

134.    To the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

135.    As a result of the foregoing, should it be held liable under the preceding Count I, Argent should be ordered to disgorge any indemnification payments made by Strategic and/or the Plan, plus interest.

## **COUNT IV**

### **Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3), Against Shareholder Defendants**

136.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

137.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

138.    The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the

transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

139.    As a result of the prohibited transactions caused by Argent described above, Shareholder Defendants received Plan assets in payments above fair market value for their Strategic Family stock.

140.    Shareholder Defendants were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

141.    Shareholder Defendants knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase, directly or indirectly, of their Strategic Family stock in the ESOP Transaction, (3) that they received a transfer of Plan assets, directly or indirectly, (4) that Argent was a fiduciary to the Plan, (5) that they were officers or directors or persons having powers or responsibilities similar to officers or directors, employees, 10% or more shareholders of Strategic Family, or otherwise parties in interest, (6) that the Plan borrowed from Shareholder Defendants to finance the stock purchase, and (7) that Argent caused the Plan to engage in stock purchase and loan transactions in the ESOP Transaction.

142.    As officers or directors or persons having powers or responsibilities similar to officers or directors, and as selling shareholders who had knowledge of the deal's details through their negotiation of the ESOP Transaction and through the contracts consummating the ESOP Transaction, Shareholder Defendants were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction with parties in interest. As parties in interest, Shareholder Defendants are liable for the §§ 406(a)(1)(A), 406(a)(1)(B), and 406(a)(1)(D) violations alleged in Count I.

143.     Shareholder Defendants have profited from the prohibited transactions in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets that belong to the Plan.

144.     Shareholder Defendants are subject to appropriate equitable relief including disgorgement of any profits, accounting for profits, surcharge, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## COUNT V

### Causing and Engaging in Prohibited Transactions Forbidden by ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b), Against James R. Urbach

145.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

146.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits James R. Urbach from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Selling Shareholders, of any assets of the Plan, as took place in and after the 2019 Transaction, and again in and after the 2020 Transaction, with the transfer of Plan assets as additional consideration for Strategic Family stock sold to the Plan in the 2017 Transaction and in continuing payments on the loan.

147.     The 2019 Transaction and the 2020 Transaction directly or indirectly transferring Plan assets to the parties in interest, and for their use and benefit, was authorized by James R. Urbach in his capacity as Trustee for the Plan.

148.     James R. Urbach caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), in the 2019 Transaction and the 2020 Transaction.

149.    ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants."

150.    James R. Urbach caused the Plan in 2019 to accept an obligation to pay to the Selling Shareholders directly or indirectly an additional $104,500,000 for Strategic Family stock it already owned, which was further above fair market value and in violation of ERISA, as described above. James R. Urbach caused the Plan in 2020 to accept an obligation to pay to the Selling Shareholders directly or indirectly an additional $45,000,000 for Strategic Family stock it already owned, which was further above fair market value and in violation of ERISA, as described above. This primarily benefited the Selling Shareholders to the substantial detriment of the Plan and its participants and beneficiaries, even though Defendant Urbach was required to act solely in the interests of the Plan's participants and beneficiaries in connection with any such transaction.

151.    James R. Urbach caused and engaged in prohibited transactions in violation of ERISA § 406(b)(2).

152.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

153.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

154.    James R. Urbach has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT VI

**Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against James R. Urbach**

155.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

156.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

157.    The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

158.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

159.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

160.    James R. Urbach is liable for his independent fiduciary breaches under ERISA § 404(a)(1) for failing to remedy the continuing effect of fiduciary breaches by his predecessor trustee, Argent, which agreed to the Stock Purchase Agreement on behalf of the Plan that allegedly allowed in 2019 and 2020 for additional principal to be added to the Plan's loan for its 2017 stock purchase, above the fair market value of the stock on the date of the 2017 Transaction. Argent's agreement that the initial purchase price could be adjusted with increases in subsequent years, rather than conclusively establish the Plan's cost for the shares based on the fair market value determined as of the date of the 2017 Transaction, was contrary to sound business principles of evaluation and to its duties under ERISA. Defendant Urbach's failure to contest such Stock Purchase Agreement provisions and his causing of the Plan to assume losses of $149,500,000 in 2019 and 2020 breached his duties under ERISA. Defendant Urbach breached his fiduciary duty as Trustee by failing to take action to prevent the 2019 Transaction and the 2020 Transaction by actions including but not limited to filing suit or informing appropriate regulatory agencies including the U.S. Department of Labor.

161.    James R. Urbach was further required to undertake an appropriate and independent investigation of the fair market value of Strategic Family stock in 2019 and 2020, including to assess whether the company achieved certain targets in the Stock Purchase Agreement, in order to fulfill his ERISA and contractual duties, and an appropriate investigation would have revealed that the valuations did not reflect the fair market value of the Strategic Family stock purchased by the Plan, that targets were not met, that the provision of the Stock Purchase Agreement purportedly

supporting additional payment of consideration by the Plan was not valid, and that the Plan would pay excessive consideration by subsequently increasing the principal on its loan for the 2017 stock purchase.

162.    In the 2019 Transaction and the 2020 Transaction, James R. Urbach was required to discharge his duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and the beneficiaries of the Plan and defraying reasonable expenses of administering the Plan. The additional payment obligations incurred by the Plan for its Strategic Family stock, for the benefit of the Selling Shareholders including Shareholder Defendants, breached this duty.

163.    James R. Urbach breached his fiduciary duties with respect to the Plan by failing to consider whether the Plan was or would be paying more than fair market value for Strategic Family stock; failing to adequately consider whether the 2019 Transaction and the 2020 Transaction were in the best interests of the Plan; failing to exercise appropriate prudence and diligence by obtaining an accurate, thorough, detailed analysis of the stock value from a qualified expert; failing to challenge the invalid provision of the Stock Purchase Agreement; and causing and allowing the transfer of Plan assets to the Selling Shareholders, directly or indirectly, in the 2019 Transaction and the 2020 Transaction.

164.    James R. Urbach breached his duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

165.    James R. Urbach has caused losses to the Plan by his breaches of fiduciary duty in an amount to be proved specifically at trial.

## COUNT VII

### Violation of ERISA §§ 410 and 404(a)(1)(A), (B),
### 29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), Against James R. Urbach

166.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

167.    ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA § 406 is under Part IV, any provision that attempts to relieve James R. Urbach, a Plan fiduciary, of responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable to the Count V claim here.

168.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

169.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

170.    The indemnification agreement purports to provide payment or reimbursement for the benefit of James R. Urbach for his expenses, losses, damages, and liabilities, including but not limited to attorneys' fees.

171.    To the extent that the indemnification agreement attempts to relieve James R. Urbach of his responsibility or liability to discharge his duties under ERISA, or attempts to have

36

Strategic (a Plan-owned company) and thereby the Plan be responsible for his liability for breaches of the statute, including but not limited to defense costs, such provisions are void as against public policy.

172.    To the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

173.    As a result of the foregoing, should he be held liable under the preceding Count V, James R. Urbach should be ordered to disgorge any indemnification payments made by Strategic and/or the Plan, plus interest.

## COUNT VIII

### Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3), Against Shareholder Defendants

174.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

175.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

176.    The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the

transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

177.    As a result of the prohibited transactions caused by James R. Urbach described above, Shareholder Defendants received Plan assets in payments above fair market value for their Strategic Family stock.

178.    Shareholder Defendants were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

179.    Shareholder Defendants knew or should have known (1) about the existence of the Plan, (2) that they received transfers of Plan assets, directly or indirectly, in the 2019 Transaction and the 2020 Transaction, as additional consideration for their Strategic Family stock sold in the 2017 Transaction, (3) that James R. Urbach was a fiduciary to the Plan, (4) that they were officers or directors or persons having powers or responsibilities similar to officers or directors, employees, 10% or more shareholders of Strategic Family, or otherwise parties in interest, in the ESOP Transaction, including its 2019 and 2020 stages, and (5) that James R. Urbach caused the transfer of Plan assets.

180.    As officers or directors or persons having powers or responsibilities similar to officers or directors, and as selling shareholders who had knowledge of the 2017 Transaction, the 2019 Transaction, and the 2020 Transaction, and through the contracts consummating the ESOP Transaction, Shareholder Defendants were aware of sufficient facts that the 2019 and 2020 Transactions constituted prohibited transactions with parties in interest. As parties in interest, Shareholder Defendants are liable for the § 406(a)(1)(D) violations alleged in Count V.

181.    Shareholder Defendants have profited from the prohibited transactions in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets that belong to the Plan.

182.    Shareholder Defendants are subject to appropriate equitable relief including disgorgement of any profits, accounting for profits, surcharge, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## CLASS ACTION ALLEGATIONS

183.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the Strategic ESOP (the "Plan") and the beneficiaries of such participants as of the date of the December 28, 2017 ESOP Transaction or anytime thereafter. Excluded from the Class are the shareholders who sold the stock of Strategic Family, Inc. ("Strategic Family") to the Plan on December 28, 2017, and their immediate families; the directors and officers of Strategic Family or Strategic Financial Solutions, LLC and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

184.    The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's most recent Form 5500 filing reports that as of December 31, 2020, there were 724 participants in the Plan.

185.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

i.  Whether Argent served as Trustee in the Plan's acquisition of Strategic Family stock;

ii.  Whether Argent was an ERISA fiduciary of the Plan;

iii.  Whether Argent caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase Strategic Family stock and take loans from parties in interest;

iv.  Whether Argent engaged in a good faith valuation of the Strategic Family stock in connection with the ESOP Transaction;

v.  Whether Argent caused the Plan to pay more than fair market value for Strategic Family stock;

vi.  Whether Argent engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

vii.  Whether Argent engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

viii.  Whether Argent breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of Strategic Family stock in or about December 2017 and by causing the ESOP Transaction;

ix.  Whether Argent breached its fiduciary duty in the Refinancing Transaction;

x.  Whether James R. Urbach served as Trustee in the Plan's assumption of an obligation to pay an additional $104,500,000 for its Strategic Family stock in the 2019 Transaction;

xi. Whether James R. Urbach served as Trustee in the Plan's assumption of an obligation to pay an additional $45,000,000 for its Strategic Family stock in the 2020 Transaction;

xii. Whether James R. Urbach was an ERISA fiduciary of the Plan;

xiii. Whether James R. Urbach caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to transfer Plan assets to parties in interest, directly or indirectly, in the 2019 Transaction and the 2020 Transaction;

xiv. Whether James R. Urbach engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the 2019 Transaction and the 2020 Transaction;

xv. Whether James R. Urbach breached his fiduciary duty by allowing the 2019 Transaction and the 2020 Transaction;

xvi. Whether Shareholder Defendants were parties in interest;

xvii. Whether Shareholder Defendants, as parties in interest, knowingly participated in prohibited transactions;

xviii. The amount of losses suffered by the Plan and its participants as a result of Argent's ERISA violations;

xix. The appropriate relief for Argent's violations of ERISA;

xx. The appropriate relief for Shareholder Defendants' knowing participation in Argent's violations of ERISA

xxi. The amount of losses suffered by the Plan and its participants as a result of James R. Urbach's ERISA violations;

xxii.   The appropriate relief for James R. Urbach's violations of ERISA, and

xxiii.  The appropriate relief for Shareholder Defendants' knowing participation in James R. Urbach's violations of ERISA.

186.    Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of her Plan account because the Plan paid above fair market value and took on excessive loans for Strategic Family stock, resulting in her being allocated fewer shares of stock, and she continues to suffer such losses in the present because Argent and James R. Urbach failed to correct the overpayment by the Plan and prevent additional overpayments after the 2017 Transaction.

187.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

188.    Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Argent and James R. Urbach, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

189.    The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A.    Declare that Defendant Argent caused the Plan to engage in and itself engaged in prohibited transactions and thereby breached its duties under ERISA;

B.    Declare that Defendant James R. Urbach caused the Plan to engage in and himself engaged in prohibited transactions and thereby breached his duties under ERISA;

C.    Declare that Shareholder Defendants knowingly participated in prohibited transactions with the Plan in violation of ERISA;

D.    Declare that Defendant Argent breached its fiduciary duties under ERISA to the Plan and the class members;

E.    Declare that Defendant James R. Urbach breached his fiduciary duties under ERISA to the Plan and the class members;

F.    Order Defendants to make good to the Plan and/or to any successor trust(s) the losses resulting from the violations of ERISA and disgorge any profits they made through use of assets of the Plan;

G.    Order rescission of the 2017 Transaction;

H.    Order rescission of the Refinancing Transaction;

I.    Order rescission of the 2019 Transaction;

J.    Order rescission of the 2020 Transaction;

K.    Impose a constructive trust on all payments received by Shareholder Defendants as a result of the 2017 Transaction, the Refinancing Transaction, the 2019 Transaction, and the 2020 Transaction;

L.      Order that Defendants provide other appropriate equitable relief to the Plan and its
        participants and beneficiaries, including but not limited to surcharge, providing an
        accounting for profits, and imposing a constructive trust and/or equitable lien on
        any funds wrongfully held by Defendants;

M.      Order the proceeds of any recovery for the Plan to be allocated to the accounts of
        the class members to make them whole for any injury that they suffered as a result
        of the breaches of ERISA in accordance with the Court's declaration;

N.      Order the allocation to the accounts of the class members of the additional shares
        of stock that would have been allocated but for the Plan's overpayment on company
        stock and Defendants' breaches of ERISA;

O.      Order the removal of Defendant James R. Urbach as Trustee and Plan fiduciary and
        the replacement of Defendant Urbach by an Independent Fiduciary and enjoin
        Defendant Urbach from acting as a fiduciary for any employee benefit plan that
        covers or includes any Strategic employees or members of the Class;

P.      Declare that the indemnification agreement between Defendant Argent and
        Strategic violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void;

Q.      Order Defendant Argent to reimburse Strategic for any money paid by Strategic
        under any indemnification agreement between Argent and Strategic, plus interest;

R.      Declare that the indemnification agreement between Defendant James R. Urbach
        and Strategic violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and
        void;

S.    Order Defendant James R. Urbach to reimburse Strategic for any money paid by Strategic under any indemnification agreement between Urbach and Strategic, plus interest;

T.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

U.    Enjoin Defendants from dissipating any of the proceeds they received from the alleged prohibited transactions held in their actual or constructive possession until the Plan participants' rights can be adjudicated;

V.    Enjoin Defendants from transferring or disposing of any of the proceeds they received from the alleged prohibited transactions to any person or entity, which would prejudice, frustrate, or impair the Plan participants' ability to recover the same;

W.    Order Defendant Argent to disgorge any fees it received in conjunction with its services as Trustee for the Plan in the ESOP Transaction as well as any earnings and profits thereon;

X.    Order Defendants to pay prejudgment and post-judgment interest;

Y.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and her counsel as class counsel; and

Z.    Award such other and further relief as the Court deems equitable and just.

Dated:     January 4, 2022

Respectfully submitted,

**BAILEY & GLASSER LLP**

*/s/ Gregory Y. Porter*
Gregory Y. Porter (NY Bar #5781448)
Ryan T. Jenny (NY Bar #3008745)
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

*Attorneys for Plaintiff*